

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JRS:JBD
F.#2020R01065

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 22, 2025

By ECF

The Honorable Pamela K. Chen
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Michael Richard Gallagher
              Criminal Docket No. 25-66 (PKC)

Dear Judge Chen:

      The government respectfully submits this letter in anticipation of sentencing in the above-referenced case, which is scheduled for July 29, 2025 at 10:30 a.m. The defendant entered a guilty plea in this matter on March 20, 2025 to one count of wire fraud, in violation of Title 18, United States Code, Section 1343. For the reasons set forth below, the government respectfully submits that a sentence within the applicable United States Sentencing Guidelines range of 10 to 16 months' imprisonment is appropriate in this case.

I.     Background

      As accurately reflected in the Pre-Sentence Investigation Report ("PSR"), the defendant's arrest and guilty plea stems from his role in various "boiler room" schemes designed to defraud would-be investors into purchasing fictitious securities. (PSR ¶ 4.) As part of the scheme, the defendant created a fake website targeting potential investors in the United States, Australia, Canada, and the United Kingdom and posed as a representative of the Swiss bank UBS. (Id.) While posing as a UBS representative, the defendant communicated with an individual who he believed to be a prospective investor—but who was really an undercover law enforcement officer ("UC #2")—and pitched UC #2 on an investment in fictitious government-backed bonds. (Id. ¶ 17.) UC #2 agreed to invest $100,000 in fictitious government bonds, including $30,000 that was sent to the defendant. (Id. at ¶¶ 17-18.)

      In recorded phone calls, the defendant also discussed "franchising" the boiler room scheme to target other would-be victims—including by using scripts to target victims over the phone, creating fake documents, and conducting trainings for potential co-

conspirators who would want to replicate the scheme. (Id. at ¶¶ 4-15, 20.) The defendant was arrested at JFK Airport on February 7, 2025 after arriving in New York for the purpose of conducting training sessions for would-be co-conspirators on how to implement and expand his boiler-room scheme. (Id. at ¶ 23.)

II.     Applicable Law

The Sentencing Guidelines are advisory, not mandatory. United States v. Booker, 125 S. Ct. 738, 764-65 (2005). However, the Supreme Court held in Booker that the sentencing court must consider the Guidelines in formulating an appropriate sentence. Id. In Gall v. United States, 552 U.S. 38 (2007), the Supreme Court set forth the procedure for sentencing courts to follow in light of Booker:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.

Gall, 552 U.S. at 49 (citation omitted). Next, a district court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [the district court] may not presume that the Guidelines range is reasonable. [The district court] must make an individualized assessment based on the facts presented." Id. at 49-50 (citation and footnote omitted). Those statutory factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), and "the need for the sentence imposed [] (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant[,]" 18 U.S.C. § 3553(a)(2).

III.    Sentencing Guidelines Calculation

The government agrees with Probation's calculation of the Guidelines. Specifically, the government agrees that the defendant's base offense level is seven; that he should receive an eight-point enhancement for a loss exceeding $95,000; and that he should receive a two-point enhancement because a substantial portion of the scheme was committed from outside the United States. Moreover, the government agrees that the defendant should receive a three-point reduction for acceptance of responsibility and an additional two-point reduction for being a zero-point offender, which results in an adjusted offense level of 12. Because the defendant is in criminal history category I, his applicable advisory Guidelines range is 10-16 months' imprisonment. The defendant stipulated to this Guidelines range in his plea agreement with the government.

IV.     Discussion

In addition to the Advisory Sentencing Guidelines range, the government believes the following sentencing factors are particularly relevant in fashioning an appropriate sentence in this case.

As an initial matter, the conduct here is serious. The defendant intended to steal a significant amount of money from one particular individual and devised a scheme that he clearly intended to use to harm additional, unwitting victims. While the defendant's scheme was stopped as a result of a sting operation, thereby minimizing the losses to actual victims, the scope of the defendant's intended crimes was vast. Moreover, his crime was not the result of impulsivity or a single bad decision; instead, his use of fake websites, a detailed script to entice victims, fake paperwork, and an expressed desire to turn his scheme into a "turnkey" operation that he could teach to other would-be co-conspirators reflects a degree of sophistication, planning, and premeditation that is not captured in the loss amount alone. The Court's ultimate sentence should reflect the severity of this conduct.

In the same vein, the sentence in this case should adequately deter both the defendant and others in the defendant's position from engaging in similar forms of criminality. Boiler-room schemes like the one devised by the defendant are all too common and often target victims who are vulnerable or unsophisticated. The financial harm caused by these schemes can be devastating. Particularly in cases like these where the perpetrators of the scheme are outside the United States, future defendants may believe that the risks of being caught are outweighed by the potential for significant ill-gotten gains. See Harmelin v. Michigan, 501 U.S. 957, 988 (1991) ("[S]ince deterrent effect depends not only upon the amount of the penalty but upon its certainty, crimes that are less grave but significantly more difficult to detect may warrant substantially higher penalties."). It is therefore particularly important that defendants who are caught and held to account by the justice system receive punishments that are sufficiently severe to deter others from engaging in similar conduct. Principals of general deterrence weigh heavily in favor of a meaningful prison sentence for the defendant. See United States v. Cavera, 550 F.3d 180, 196 (2d Cir. 2008) (en banc) ("Where the profits to be made from violating a law are higher, the penalty needs to be correspondingly higher to achieve the same amount of deterrence."); United States v. Heffernan, 43 F.3d 1144, 1149 (7th Cir. 1994) (Posner, C.J.) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it."); see also S. Rep. No. 98-225, at 76 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3259 ("The second purpose of sentencing is to deter others from committing the offense. This is particularly important in the area of white collar crime and government corruption. Major white collar criminals often are sentenced to small fines and little or no imprisonment. Unfortunately, this creates the impression that certain offenses are punishable only by a small fine that can be written off as a cost of doing business.").

Notably, white-collar cases present the scenario where deterrence is most likely to be effective. As the Honorable Jack B. Weinstein explained, "Persons who commit white-

3

collar crimes like defendant's are capable of calculating the costs and benefits of their illegal activities relative to the severity of the punishments that may be imposed." United States v. Stein, No. 09-CR-377, 2010 WL 678122, at *3 (E.D.N.Y. Feb. 25, 2010).  Thus, because "economic and fraud-based crimes are more rational, cool and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006); see also United States v. Marsh, No. 10-CR-480 (JBW), 2011 WL 5325410, at *1 (E.D.N.Y. Oct. 26, 2011) ("[I]ndividuals who engage in financial fraud can, at least in theory, be deterred by a substantial threat of penalties.  Their actions are calculated.  They choose to engage in white collar crime because they believe that the potential for significant financial benefits outweighs the risk that they will be punished.").  The Court should ensure that its sentence serves to firmly dissuade both the defendant and any future defendants from similar criminal conduct.

   Finally, the government recognizes the relevance of the defendant's history and characteristics in fashioning an appropriate sentence.  As described in both the PSR and the defendant's sentencing submission, the defendant appears to have a documented history of trauma and abuse, as well as multiple medical conditions that, particularly when combined with the defendant's age, have made the time he has served at the MDC to date more challenging than it would be for defendants who might otherwise be similarly situated.  The government recognizes that these factors can properly be viewed as mitigating by the Court in reaching its sentencing determination.

   Nevertheless, that mitigation must be balanced against the deliberateness, callousness, and harmfulness of the defendant's conduct, all of which might ordinarily weigh in favor of an above-Guidelines sentence.  In light of all of those factors, a Guidelines sentence is appropriate.

V. <u>Conclusion</u>

For the foregoing reasons, the government respectfully submits that a sentence within the applicable Guidelines range of 10 to 16 months' imprisonment is appropriate to accomplish the goals of sentencing in this case.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:       /s/
        Joshua B. Dugan
        Assistant U.S. Attorney
        (718) 254-6144

cc:    Clerk of the Court (PKC) (by ECF)
       Michael D. Weil, Esq. (by ECF)